231 N.J. Super. 152 (1988)
555 A.2d 50
IN THE MATTER OF THE LIQUIDATION OF INTEGRITY INSURANCE COMPANY.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided September 22, 1988.
*153 Steven S. Radin, for the liquidator of Integrity Insurance (Sills, Cummis, Zuckerman, Radin, Tishchman & Epstein, attorneys, Steven S. Radin of counsel, Steven S. Radin and Davis J. Howard on the brief).
Eugene R. Anderson, admitted pro hac vice, for Allied Signal (Anderson, Russell, Kill & Okick, attorneys, Eugene R. Anderson of counsel; Alan J. Shmaruk on the brief).
Warren J. Martin, Jr., for Clark Equipment Co. and 18 policyholders (Riker, Danzig, Scherer, Hyland & Perretti, attorneys, Warren J. Martin, Jr. and Shawn L. Kelly of counsel and on the brief).
*154 David H. Remes, admitted pro hac vice, for Armstrong, Boeing (Covington & Burling, attorneys, David H. Remes on the brief).
David L. Menzel, for the New Jersey Property-Liability Insurance Guaranty Association (Stryker, Tams & Dill, attorneys, David L. Menzel of counsel, David L. Menzel and Susan Murr on the brief).
James M. Mulvaney, for Surety Reinsurers (McElroy, Deutsch & Mulvaney, attorneys, James M. Mulvaney of counsel, Margaret F. Catalano on the brief).
William F. Jerome, admitted pro hac vice, for the Superintendent of Insurance of the State of New York as ancillary receiver of Integrity Ins.
Andrew J. Cevasco, for Western Lloyds Insurance Co. (Herten, Burstein, Sheridan & Cevasco, attorneys, Andrew J. Cevasco on the brief).
James B. Manning, for the Integrity Directors (Carpenter, Bennett & Morrissey, attorneys).
MEEHAN, J.S.C.
This motion was brought before the court by Clark Equipment Company and 18 other creditors and policyholders (hereinafter, the "policyholders") of Integrity Insurance Company in Liquidation (hereinafter, "Integrity") for an order:
(1) establishing a policyholders' committee to represent policyholders in this proceeding;
(2) empowering the policyholders' committee to retain counsel, accountants and other professionals, as well as providing standing to commence and maintain litigation on behalf of the Integrity estate; and,
(3) authorizing the costs of the policyholders' committee, including those of counsel and experts, to be charged as expenses of administration of the Integrity estate, subject to the review and approval of the court.
*155 In support of their application, the policyholders rely upon:
(1) the assertion that this court has the general equitable power to create such a committee;
(2) the Federal Bankruptcy Code provisions governing the appointment and powers of a creditors' committee in a chapter 11 reorganization are consistent with the public policy of having creditors participate in the liquidation; and,
(3) insurance insolvency precedent.
Objections to this application have been filed by the liquidator and deputy liquidator, the New Jersey Property-Liability Insurance Guaranty Association, the Superintendent of Insurance of the State of New York as ancillary receiver of Integrity Insurance Company and Surety Reinsurers.
The arguments advanced in opposition to the application include assertions that:
(1) the court lacks authority to create a policyholders' committee;
(2) the Federal Bankruptcy Code does not provide authority or precedent for the establishment of a policyholders' committee; and,
(3) movants have failed to establish the necessity and purpose for such a committee.
The procedural history in this case is as follows. On December 30, 1986, the Commissioner of Insurance of the State of New Jersey (hereinafter, the "Commissioner") filed a verified complaint for the rehabilitation of Integrity. On March 24, 1987, this court entered an order of liquidation, which was amended on March 25, 1987, placing Integrity into liquidation and terminating the rehabilitation phase of the delinquency proceeding. Pursuant to the New Jersey Rehabilitation and Liquidation Act, N.J.S.A. 17:30C-1 et seq., Kenneth D. Merin, the Commissioner of Insurance of New Jersey, was vested with all the powers and authority under the statute to marshal and liquidate the assets of Integrity.
*156 Since the entry of the order of liquidation, the Commissioner, in his capacity as liquidator, through the deputy liquidator, has been marshalling the assets of the Integrity estate and evaluating the outstanding claims against the estate for ultimate distribution to policyholders, guaranty associations, and other claimants.
The movants contend that a policyholders' committee is required to allow policyholders to protect their interests in this proceeding. They claim that they have not been informed as to the progress of the case, nor have they been given the opportunity to participate in negotiations and are unaware of the status of commutations. Movants further allege that they are unaware of the financial status and administration of the Integrity estate.
Dealing first with the issue of whether this court has the authority to create a policyholders' committee, pursuant to the Chancery Court's broad equitable power, as well as N.J.S.A. 17:30C-4d, which provides that the court may grant
such ... relief as the nature of the case and the interest of the policyholders, creditors, stockholders, members, subscribers, or the public may require,
it is clear that this court is empowered and authorized to create the type of policyholders' committee sought by movants. See Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409 (Ch. 1971); In re Appointment of Vice Chancellors, 105 N.J. Eq. 759 (Ch. 1930). As noted in 19A Appleman, Insurance Law and Practice (1982), § 10654:
[A] court of equity, by virtue of its supervision over all phases of a liquidation, possesses full discretion to permit or deny an application for intervention. The court may permit policyholders, or others interested in the administration of the assets, to appear, represent their own interests, and be made parties. While a statutory procedure for the disposition of claims may be valid, it is desirable to protect all creditors, wherever situated.... [at 90-91]
However, simply because the authority exists does not mean that it must be utilized. The court must exercise its discretion in resolving the issue so as to serve the interests of all concerned parties in the most equitable and just manner.
*157 The Rehabilitation and Liquidation Act, N.J.S.A. 17:30C-1, et seq. (hereinafter, the "act") provides the procedures to be used to liquidate or rehabilitate an insurer. There is no specific provision in the act which addresses the situation before this court. Accordingly, the court must look to the express provisions of the act and the legislative intent behind the act in resolving the issue presented.
N.J.S.A. 17:30C-3 provides that "[d]elinquency proceedings pursuant to this Act shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer" and that only "the commissioner shall be vested by operation of law, with the title to all property, contracts, and rights or action ... of the insurer." N.J.S.A. 17:30C-15(b).
The statute is designed to provide a comprehensive, orderly and efficient procedure for liquidating insurance companies while protecting the rights of all interested parties. The act appoints the Commissioner as the person in exclusive control over the proceeding, with guidance provided by the court. N.J.S.A. 17:30C-5(b). Pursuant to N.J.S.A. 17:30C-17, the Commissioner is authorized to appoint "one or more special deputy commissioners to act for him, and may employ such counsel, clerks and assistants as he deems necessary."
The act sets forth the powers, duties and obligations of the liquidator in great detail. The statutory function of the Commissioner and/or the deputy liquidator is to weigh all the interests and to perform an efficient and fair liquidation of Integrity. The Commissioner and deputy liquidator are subject to a fiduciary obligation to all policyholders and creditors of Integrity and to the supervision of the court pursuant to N.J.S.A. 17:30C-2.
The movants initially make claims that the Commissioner and deputy liquidator may have in the past and may in the future, violate their statutory and fiduciary responsibilities. Such allegations were withdrawn by the time of oral argument. This *158 court finds that movants have failed to establish any such allegations.
This court recognizes that, at the outset of this proceeding, and at the time this motion was originally filed, some of movants' positions may have been warranted. However, certain developments that have taken place since that time have provided for some of what movants seek. Movants, the court and the liquidator are primarily concerned with insuring the proper and efficient administration of the Integrity estate. Movants contend that they are entitled to have knowledge of all matters affecting the estate and the right to participate in this proceeding to achieve that goal. Although movants claim they have a right to notice, the act provides that notice is required in only six circumstances: (1) N.J.S.A. 17:30C-7(c) requires notice to the Commissioner of an application by a third party for an order terminating a rehabilitation and allowing the insurer to resume the possession of its property and the conduct of its business; (2) N.J.S.A. 17:30C-9(a) requires notice to the creditors of the entry of an order of liquidation and the procedure for submitting claims to the liquidator; (3) N.J.S.A. 17:30C-19(b)(2) requires notice from a claimant to a domiciliary receiver if the claimant intends to prove his claim in an ancillary proceeding, and also requires notice from the domiciliary receiver to the ancillary receiver and the claimant if the domiciliary receiver intends to contest the claim; (4) N.J.S.A. 17:30C-20(c) requires notice of a judicial hearing with respect to the allowance or disallowance of a particular claim; (5) N.J.S.A. 17:30C-30(a) requires that all claimants be notified of the entry of an order declaring the insurer insolvent (if such declaration of insolvency was not part of the order of liquidation); and (6) N.J.S.A. 17:30C-31(d) requires that the Commissioner provide notice to all guaranty associations and other insurance commissioners of his intention to apply for disbursements of assets of the estate to guaranty associations. Based on the foregoing, it is clear that movants can assert no right to notice as to all proceedings in this matter under the act. While movants may *159 not be entitled to notice, this court has ordered the liquidator to give notice to the movants on numerous occasions when not required by statute or this court's initial liquidation order. This court's orders of April 15, 1988 and June 2, 1988 have provided Clark and other claimants with the opportunity to be apprised of, and to participate in, future proceedings. Further, movants are protected by this court, as all claims, plans, commutations and fees are subject to the court's approval. Therefore, if any indications existed that the liquidator was not complying with his statutory duty, this court would simply not approve the application presented. For those members of the movants who want to know the progress in this matter, a procedure has been established to provide notice as set forth in the April 15, 1988 and June 2, 1988 orders.
The liquidator and deputy liquidator are best qualified to perform the liquidation of Integrity as they have no special interest in the outcome except to administer the liquidation for the maximum benefit of all interested parties. Given the accountability of the liquidator under the act, his fiduciary duty to all interested parties, and the orders entered by this court, it is clear that numerous safeguards currently exist which would enable detection of any possible violations of duty which may imperil the interests of creditors.
The movants in this matter look for support to the Federal Bankruptcy Act. Under chapter 11 proceedings in bankruptcy, 11 U.S.C.A. § 1101 et seq., a creditors' committee is formed, which committee is funded by the estate of the bankrupt. Under chapter 7 proceedings in bankruptcy, 11 U.S.C.A. § 701 et seq., with rare exception, there is no creditors' committee and no funding by the estate of the bankrupt.
In this matter, the facts are more analogous to a chapter 7 proceeding than a chapter 11 proceeding in bankruptcy. While this decision refers to the movants as representing policyholders, there are no policies in existence at this time, and there *160 have actually been no policyholders since the court order of March 24, 1987 as amended by the March 25, 1987 order. Under those orders of liquidation, all policies of insurance were cancelled. There are continuing obligations of Integrity in liquidation for claims incurred whether reported or not during the policy periods.
Chapter 11 proceedings envision the bankrupt continuing operations with the potential of making arrangements and earning enough income to come out of bankruptcy. Although not intended, the bankrupt may not be able to operate at a profit and incur greater losses which would mean a loss to the creditors. There is no continuing operation of Integrity Insurance Company. It no longer writes policies or has any policies in effect, and the sole purpose of this liquidation is to marshal the assets and pay all claims, creditors and obligations of Integrity. This liquidation is comparable to a straight bankruptcy.
I was referred to the unreported case of The Mutual Fire, Marine & Inland Insurance Company, No. 3483 C.D. (1986), wherein a creditors' committee was appointed in an insurance rehabilitation program. The obvious difference between that matter and this is that the insurance company in Mutual Fire, supra, remains in business and has policies outstanding while in rehabilitation. The possibility of greater debts being incurred exists in that situation, and the rights of claimants, creditors, and policyholders is different than when an insurance company is being liquidated.
This court does not find support for a funded policyholders' committee from the Federal Bankruptcy Act.
This court believes that the creation of a policyholders' committee would inevitably result in an inefficient administration of the estate, increased litigation, depletion of the assets of *161 the estate and would have an adverse impact upon the interests of all other creditors. In this case, numerous groups with varying interests exist. Indeed, there is no great identity of interests even among the single group referred to as policyholders. If the creation of a policyholders' committee were permitted, undoubtedly groups of other claimants would also seek the appointment of a committee to represent the individual interests of that policyholders' group. The policyholders fall into three main categories. They are:
(1) policyholders where coverage is provided by a guaranty fund. This appears to be the largest group of plaintiffs;
(2) policyholders who have claims for which the guaranty fund provides coverage but the claims exceed the guaranty fund coverage; and
(3) policyholders who have claims that do not receive guaranty fund coverage.
In fact, Western Lloyds Insurance Company has already indicated to this court that it reserved the right to apply for the appointment of a cedent's committee.
Moreover, if a policyholders' committee or any other like committee is created, it is unavoidable that decisions that can and should be made solely and promptly by the liquidator will be hindered and delayed due to the additional step of review by the committee. For the foregoing reasons, the motion to appoint a policyholders' committee is denied.
The court is not, however, prohibiting the formation of an unofficial or informal committee of policyholders or other creditors. Indeed, such a committee may be useful in certain limited circumstances. The unofficial committee would be required to bear all expenses it may incur in protecting its interests and in raising issues to the court. Movants contend that the costs of the committee should be charged as expenses of administration *162 of the estate. In support of this position, movants rely upon the court's equitable powers and R. 4:42-9(a)(2) which provides:
(a) No fee for legal services shall be allowed ... except
(2) Out of a fund in court. The Court in its discretion may make an allowance out of such fund....
The court cannot accept movant's position. It is well established that each litigant should bear his own expenses in prosecuting and defending his interests. Huber v. Zoning Bd. of Adj. Howell Tp., 124 N.J. Super. 26, 28 (Law Div. 1973); Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960). N.J.S.A. 17:30C-17 provides that the expenses of administering the estate, which role is to be accomplished solely by the liquidator and those persons appointed by him, are to be paid out of funds or assets of the insurer. Any expenditure out of the estate for the activities of a committee which is attempting to perform the role charged to the liquidator and those persons appointed by him, would be contrary to the provisions of the act and would be a waste of the assets of the estate. Such expenditures would benefit only that group of policyholders represented by the committee while, at the same time, diminish the potential recovery of other creditors. Accordingly, the expenses of any informal committee will be borne by that committee.
In conclusion, movants have failed to establish the necessity for the appointment of a policyholders' committee. The Legislature intended that the Commissioner and deputy liquidator, who are uniquely qualified to do so, have control over the administration of the estate. This court provides further protection of all creditors by overseeing the administration and requiring court approval of any disbursements. The appointment of a policyholders' committee would defeat the objective of the act; that is, the prompt, fair and equitable distribution of the estate.
For the foregoing reasons, the motion by the policyholders for the appointment of a policyholders' committee is denied.