SCHOTT, Judge.
We grant certiorari in order to consider a temporary restraining order issued by the trial court on January 3, 1978, on the application of Chalin 0. Perez, respondent. Because this is the fourth time that this matter has been before us within the fortnight and because the exigencies of the situation on each other occasion when the matter was presented to us prevented us from elucidating the reasons for each previous action taken, we deem it appropriate to present here a complete background of the matter, including each one of the previous writs granted by us.
On December 7,1977, a notice of levy was served by the United States Internal Revenue Service (IRS) on the Whitney National Bank (Whitney) with respect to accounts 42-171-040 and 42-168-773. The levy was for $23,249 owed by taxpayers Chalin O. and Mary Ellen Perez. On December 8 the Whitney addressed a letter to Mary Ellen and Chalin O. Perez advising them of the levy and notifying them that the bank would be unable to honor withdrawals which would reduce the balance in account 42-171-040 below $11,624.50, representing half of the amount sought under the levy.
On December 14, 1977, Mrs. Perez filed in the District Court a petition for temporary restraining order and temporary injunction. In her petition she alleged as follows: She is a resident of the Parish of Orleans and Whitney is a banking corporation with its principal place of business in the Parish of Orleans. She and Mr. Perez were married and lived together in Plaquemines Parish in 1973, and until July 22, 1974, when he filed a suit for separation from bed and board in Plaquemines Parish, and this suit ultimate *1361 ly resulted in a judgment of divorce in January, 1977. From January, 1973, to the date of the filing of her petition for injunction Perez has continued to control the community which was acquired during the marriage between the parties. Her sole benefit from that community has been $3,000 a month, being paid by Perez to her under an order of the court in the separation and divorce proceedings. On November 1,1977, Perez by pleadings in those proceedings secured a termination of that allowance so that Mrs. Perez receives no allowance from the income of the community of acquets and gains for her maintenance and support since that date. During the entire period of time from January 1, 1973, all proceeds of the community have been paid to and are retained by Perez. Mrs. Perez accumulated on deposit with Whitney in her account 42-171-040 a balance in excess of $12,000, all of which were received by her under the order of court referred to for her maintenance and support, and which are her separate funds forming no part of the community. At the time of filing for the separation from bed and board in July, 1974, Mr. Perez had on deposit in his account at the Whitney No. 42-168-773 a sum in excess of $50,000, composed of community funds, and at no time has the balance in his account gone below the sum of $23,249. The community has not yet been partitioned. In addition to the accounts specifically mentioned, there are other accounts in the Whitney in the name of Mr. Perez for which deposits are well in excess of $23,249 and which are assets of the community. The bank has proposed to take half of the levy from her account and half of the levy from his account, notwithstanding the fact that there are ample funds on deposit in the name of Perez and which belong to the community for the payment of this tax liability. The community has a value in excess of $2,000,000. During the calendar year 1976, according to an income tax return prepared by certified public accounts for Mr. Perez there was paid to the community oil royalties of $186,000, which funds have been received by and are retained by Perez. On the basis of these, allegations the trial court on December 14 granted a restraining order providing as follows:
“IT IS ORDERED that a temporary restraining order issue herein restraining and enjoining the defendant, the Whitney National Bank, from paying the levy of the Internal Revenue Service served upon it out of the funds on deposit to the account of Mary Ellen Perez until it will have exhausted all funds on deposit to the credit of Chalin O. Perez, on her furnishing bond, with good and solvent surety, conditioned as the law directs, in the amount of $1,000.00.”[1]
A rule for a preliminary injunction was issued returnable on December 16, 1977, continued thereafter to December 21.
Perez responded with a declinatory exception of lis pendens, improper venue and lack of jurisdiction over the subject matter of the action, along with peremptory exceptions of no right of action, no cause of action and res judicata. The basis for the exception of lis pendens was the fact that there was presently pending in the 25th Judicial District Court for the Parish of Plaquemines a partition proceedings between these parties. Basis for the exception of venue was that since Mr. Perez was a defendant he should be sued in the parish of his domicile and the basis of the exception of lack of jurisdiction was that the court had no jurisdiction to interfere in any way with the Whitney’s handling of a levy served on it by the IRS.
The trial judge on December 21 ordered that the case be transferred to the 25th Judicial District Court, and in his oral reasons from the bench he stated that he believed the court lacked jurisdiction as well as venue in that the controversy properly belonged in the partition suit pending in Plaquemines Parish. .
On the application of Mrs. Perez to this: court for writs, in proceedings No. 9295;on the docket of this court, we of mandamus directed to judgment of December 21, transferring the case to Plaquemines Parish for the reasons:
*1362 “A suit by a New Orleans resident seeking to enjoin a New Orleans bank from carrying out its proposal to pay a tax levy partially out of an account in her name rather than entirely out of an account in her former husband’s name is properly cognizable in Orleans Parish.”
We annulled and set aside the judgment of December 21, specifically overruling the exception of improper venue.
When the matter was returned to the District Court on December 23, the trial court maintained the exception of jurisdiction and dismissed Mrs. Perez’ suit. In oral reasons for this judgment the trial judge stated:
“. . . I sincerely believe that this case properly belongs in the Parish of Plaquemines, primarily because this litigation, particularly Article X of plaintiff’s petition calls upon this court to determine the status of this property, as to whether it is community or separate.
On December 23,1977, after writ application by Mrs. Perez No. 9298 on our docket, we granted certiorari in order to consider this judgment of December 23, maintaining Mr. Perez’ exception of jurisdiction and dismissing her suit for injunctive relief. We vacated and set aside the judgment of December 23 and overruled Mr. Perez’ exception to the jurisdiction. We also extended the temporary restraining order issued by the trial court to the Whitney for a period of 10 days and remanded the case to the trial court for further proceedings.
On December 30, 1977, the trial court took up Mr. Perez’ peremptory exceptions and maintained the exceptions of no right and no cause of action, dismissing her suit. In his reasons for judgment the trial court stated that she had no right of action to bring the suit because she had acquiesced in the tax assessment against her and Mr. Perez, signing the papers and acknowledging that she was a tax debtor. The trial court indicated that she was thereby es-topped from challenging the bank’s right to pay half of the assessment out of her account. As to no cause of action, the trial court indicated that he saw no irreparable injury resulting from a failure to issue an injunction. For the third time Mrs. Perez filed application for supervisory writs (Docket No. 9318), and in response thereto on December 30, 1977, we granted certiora-ri, vacated and set aside the trial court’s judgment of December 30, dismissing Mrs. Perez’ suit and overruling Mr. Perez’ exceptions of no right and no cause of action. Since the trial court had on December 30 overruled the exception of lis pendens, that portion of the judgment was left intact. The temporary restraining order was again extended for 10 days on December 30.
We now have before us Mrs. Perez’ application for writs with respect to an order issued by the trial court on January 3,1978, at Mr. Perez’ behest addressed to the Whitney as follow:
“IT IS FURTHER ORDERED that a temporary restraining order issue herein restraining and enjoining the defendant, the Whitney National Bank, from paying the levy of the Internal Revenue Service in any other fashion than by taking an equal amount from the account of Mary Ellen Perez and the account of Chalin O. Perez, on Chalin O. Perez’s furnishing bond, with good and solvent surety, conditioned as the law directs, in the amount of $1,000.00.”
This order was issued in response to a petition by Mr. Perez styled “Third Party Demand for Injunctive Relief.” Therein he alleged: In September, 1977, he and Mrs. Perez entered into a settlement agreement with IRS by which $18,333 plus interest was assessed to them. Because of the previous proceedings the Whitney has been restrained from paying the levy out of Mrs. Perez’ funds until his funds are exhausted, so that Whitney is about to pay the entire amount from his funds. He is entitled to similar injunctive relief as that afforded Mrs. Perez under principles of equal protection of the laws. She owes the taxes to the same extent as he does under the laws of the United States. Since payment is imminent out of his funds he is entitled to a hearing on the same rule brought by her for preliminary injunction as to why half of the funds would not be taken from her account.
*1363 The order complained of in this writ application is inconsistent with our previous order. The sense of our previous order was that Mrs. Perez indeed stated a cause of action for injunctive relief and if she proved her allegations she was entitled to a preliminary injunction to the same effect as the restraining order, i. e., no funds would be taken out of her account until funds in his account were exhausted up to the amount of the levy. The restraining order before us flies in the face of this previous writ in that it orders the bank not to pay the levy in any manner other than half from each of the accounts.
We concluded when the first writ application was filed in these proceedings that they were being unnecessarily complicated by the references to the suit pending in Plaquemines Parish and the laws of the United States and regulations of the Internal Revenue Service having to do with income taxes. At the outset this was a question of a New Orleans resident being advised by her New Orleans bank that it had elected to take, and was about to take, a sizable sum of money out of her account. It hardly seems debatable that the court in her domicile has venue and jurisdiction over that question (despite its lack of jurisdiction to interfere with the IRS), and it was on this basis that the first two actions were taken by us.
With respect to the third writ issued by this court, we were confronted with the question of whether Mrs. Perez had a right of action or stated a cause of action for the relief she sought. Clearly, she had a right of action since she was seeking a remedy in the court with respect to her funds. The exception of no right of action addresses itself to the standing of the plaintiff to bring the suit. It can hardly be debated that Mrs. Perez had such a standing since it was her money in her bank account involved in the case.
As to the exception of no cause of action, she alleges that she has in her account just a little over the amount the Whitney proposes to withdraw to satisfy the IRS lien, and that all these funds had been accumulated from alimony payments made to her. In the meantime, there was a huge community under the dominion of Mr. Perez, including the other bank account which had been specifically attached alleged to have more than sufficient funds with which to pay the lien, and further that he had accumulated in one year $186,000 of community funds. Obviously, she has an interest in these funds and her interest was alleged to be more than sufficient to pay the tax lien out of those funds as opposed to her separate property. The question is, does she have a cause of action to seek a judgment of the court to enforce fairness with respect to this proposal by the Whitney. Under her allegations the Whitney’s proposal is intrinsically unfair in that it would make her pay 75% of the levy (50% from her separate account plus half of the other 50% from the community account in her husband’s name). If she had substantial other funds under her control she might not be entitled to injunction because the community settlement would ultimately remedy the Whitney’s activity. But her allegations are that she has no other significant cash under her control, although she is bound to have coming to her a substantial sum of money out of the $2,000,000 community being administered by her husband. When that community is settled either voluntarily or by judgment of the court in Plaquemines Parish, the necessary adjustments can be made in order to compensate Mr. Perez for the half of the tax levy which Mrs. Perez may owe. But in fairness, we fail to see why the Whitney should deplete all of her separate funds to pay half of the taxes incurred by the community when the Whitney is alleged to be holding a substantial community account and her interest in the community is way over and above what is required to pay this levy.
Accordingly, the temporary restraining order issued by the trial court on January 3, 1978, on the petition of Chalin O. Perez is dissolved and the case is remanded to the trial court for further proceedings.

. It will be noted that this restraining order does not attempt to restrain the Whitney from complying with the IRS levy by paying to the IRS the amount demanded.